UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL CHAYNE ARNETT, SR.,

    Plaintiff,

v.                                                                              Case No. 1:20-cv-1235
                                                                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claim for supplement security income (SSI).

The present case involves plaintiff's application for SSI filed on January 2, 2019, which alleges a disability onset date of January 18, 2018. PageID.58. Plaintiff filed a previous application for benefits which was denied on July 14, 2017.[1] In his present application, plaintiff identified 24 disabling conditions.[2] PageID.273. The record reflects that he completed a GED and had previous employment as a heavy equipment operator and maintenance supervisor. PageID.69. Administrative law judge (ALJ) Donna J. Grit entered a decision denying benefits on February 14,

---

[1] Plaintiff filed an application for disability insurance benefits (DIB) and SSI benefits in 2014. PageID.58, 111. An administrative law judge found that plaintiff had not been under a disability from November 27, 2013, through the date of the decision (July 14, 2017). PageID.111-122.

[2] Plaintiff listed the following conditions: explosive bipolar disorder; post traumatic stress disorder (PTSD); lumbar stenosis; acid reflux; migraines; high blood pressure; gastric ulcers; muscle spasms in the back; spinal bone spurs; allergies; laminectomy with spinal fusion L4-L5; hypothyroidism; nicotine dependence; lumbago; carpal tunnel bilateral; osteoarthritis of both hands; carpometacarpal (CMC) arthritis; chronic use of opioids; spinal injury from car accident on November 27, 2013; depression; heart murmur; sleep apnea; insomnia; and, high cholesterol. PageID.273.

1

2020.  PageID.58-70.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.     LEGAL STANDARD

The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since his application date of January 2, 2019. PageID.60. At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease of the lumbar spine, status post fusion; degenerative changes of the right hand and thumb; chronic obstructive pulmonary disease (COPD); obesity; bipolar disorder; adjustment disorder with mixed anxiety and depression; intermittent explosive disorder; and post-traumatic stress disorder (PTSD). PageID.61. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.61.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that he can occasionally climb ramps and stairs; never balance for [sic] climb ladders, ropes, or scaffolds or to work on narrow, slippery or moving surfaces; occasionally stoop, kneel, crouch, and crawl; never drive commercial vehicles; must avoid workplace hazards such as moving machinery, mechanical parts, and unprotected heights; and can occasionally use bilateral foot controls. He can frequently use bilateral upper extremities for hand controls; occasionally be exposed to vibration; and occasionally be exposed to fumes, dusts, gases, odors, poor ventilation. The claimant can have occasional contact with co-workers,

supervisors, and the general public; is limited to understanding, remembering and applying information to perform simple tasks; is able to focus on and complete simple tasks and adapt to routine changes in the workplace.

PageID.63. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.69.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level. PageID.69-70. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, sedentary work in the national economy such as table worker (45,000 jobs), document preparer (50,000 jobs), and final assembler (60,000 jobs). PageID.70. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 2, 2019 (the date he filed the application) through February 14, 2020 (the date of the decision). PageID.70.

### III. DISCUSSION

Plaintiff contends that the ALJ's residual functional capacity (RFC) findings are contrary to law and not supported by substantial evidence. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).

Plaintiff has raised four errors on appeal related to the allegedly flawed RFC.

> **A. The ALJ failed to comply with 20 C.F.R. § 416.920c by failing to properly consider the medical opinions. Substantial evidence does not support the finding that the opinions of plaintiff's treating physician Dr. Edward Haughn, D.O., Daniel Hodge, N.P., and Jennifer Richardson, PA-C, were not persuasive.**

5

> **B.  The ALJ failed to comply with 20 C.F.R. § 416.920c by failing to properly consider the medical opinions. The ALJ's finding that the opinion of the non-examining psychologist was persuasive is not supported by substantial evidence.**

**1.  Physical limitations**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. *See* 20 C.F.R. § 416.920c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 416.920c(b)(2).[3] If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must

---

[3]  The regulations explain "supportability" in the following terms: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations explain "consistency" in the following terms: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical

6

articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 416.920c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 416.920c(b)(1).  Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*.  "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

As one court observed, "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources." *Hardy v. Commissioner of Social Security*, 554 F. Supp. 3d. 900, 906 (E.D. Mich. 2021). Nevertheless, the new regulations set forth a minimum level of articulation for a reviewing court. *Id*.

The ALJ addressed the opinion of Daniel Hodge, FNP-C, as follows:

> The claimant's nurse practitioner, Daniel Hodge, N.P., submitted a July 2018 letter stating his opinion that the claimant is "unable to work" as he had previously stated in April 2016 (1F/1).  This statement is conclusory and unsupported by medical evidence.  Accordingly, it not a persuasive assessment of the claimant's residual functional capacity.  Moreover, I note that the decision about whether the claimant is able to work is one that is expressly reserved to the Commissioner (20 CFR 419.927(e)(1) and SSR 96-5p). I further note that the

---

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

> Appeals Council upheld the prior administrative law judge's decision giving "little weight" to the April 2016 letter for the same reason (B1A/12).
>
> Nurse Practitioner Hodge also completed a December 2019 questionnaire in which he states that the claimant is limited to lifting or carrying 10 pounds, sitting for three or four hours, and standing or walking less than two hours per day. He also states that the claimant needs to change positions frequently and lie down 25 percent of the day. He recommends that the claimant use a cane for ambulation, and asserts that the claimant is limited to handling or fingering less than 15 percent of the day (B15F/1, 2; 16F/1). These statements are not persuasive. As discussed above, although the record reflects the claimant's pain complaints, the record also shows that objective imaging of his lumbar spine remains stable since his fusion surgery (B5F/182). There are few references in the record to the claimant's alleged use of a cane, and his physical examinations show that he often exhibits normal, or slightly reduced, range of motion (B8F/4; B10F/11, 19, 26). Likewise, the record reflects arthritic changes in the claimant's right hand and wrist, but the consultative examiner found that the claimant remains able to perform fine and gross manipulative activities (B8F/4).

PageID.67-68.

The Court concludes that the ALJ's evaluation of NP Hodge's medical opinion regarding ability to do work related activities (Exh. 15F, PageID.979-980) and the accompanying statement (Exh. 16F, PageID.981-982) is not supported by substantial evidence. Specifically, NP Hodge's opinion regarding the limitations caused by the arthritic changes in plaintiff's hands is based in part on x-rays and an examination by a hand surgeon. PageID.980. NP Hodge found that this impairment affected plaintiff's ability to perform physical functions such as fingering (fine manipulation), pushing/pulling, and handling. PageID.980.

During an examination with hand surgeon James Robert Smith, M.D. on August 13, 2018, Dr. Smith noted: that plaintiff "[h]as significant loss of motion [sic] basilar joint with right thumb with moderate loss of motion basilar joint left thumb;" and that his x-rays "are quite abnormal" with "severe arthritis basilar joint thumb" and "significant cysts in the lunate." (Exh. B5F/33, PageID.404). Dr. Smith's impression was that plaintiff had severe basilar joint arthritis

and thought there was a risk in performing a fusion. PageID.960. He thought it best to proceed with a nerve conduction study. PageID.959.

The ALJ noted plaintiff's arthritis ("the record shows that he has a history or arthritis in his right hand (B5F/34))" (PageID.65), and considered Dr. Smith's examination as addressing possible carpal tunnel syndrome,

> At an August 2018 examination, the claimant's doctor suggested that the claimant's symptoms might be consistent with carpal tunnel syndrome (B11F/6). However, an October 2019 electromyography (EMG) nerve conduction study was "normal" and showed no electrodiagnostic evidence of mononeuropathy, peripheral neuropathy, or cervical radiculopathies in the claimant's bilateral upper extremities (B11F/1).

*Id*.

The ALJ evaluated the consultative examination performed by Ahmad Khaled Abdul Ali, D.O. in April 2019 (B8F) stating,

> The claimant complained of pain in his back, right hip, and wrists (B8F/2). The claimant brought a cane with him to his examination, and walked with a limp (B8F/3). He had decreased range of motion in his lumbar spine, and slight tenderness in his right hip, and was unable to push, pull, button clothes, or squat (B8F/4). However, he otherwise displayed normal range of motion with full 5/5 muscle strength throughout, intact sensation and negative straight leg raises. He was able to walk on heels and toes. He was able to sit, stand, bend, stoop, carry, tie shoes, open a door, dial a phone, make a fist, pick up a pencil, write, climb stairs, and get on and off the examination table (8F/4).

PageID.66.

A non-examining consultant for the State agency, Glen Douglass, M.D., found that plaintiff's ability to push and pull was limited in both upper extremities and that his handling (gross manipulation) was limited in both upper extremities because "[t]he wrist OA limits grasping bilat.". PageID.148-149. Dr. Douglass also stated that "[t]he bilat wrist OA limits use of hand controls to frequent" and limits lifting "as noted" (*i.e.*, less than 10 pounds) PageID.148. The ALJ found Dr. Douglass' opinion partially persuasive, and that "I have included additional limitations

based on the claimant's upper extremity issues and COPD." PageID.67. As discussed, the ALJ included a restriction for frequent use of hand controls and lifting restrictions for sedentary work, but did not address the other limitations related to the arthritis (pushing, pulling, and manipulation).

NP Hodge addressed the functional limitations due to the arthritis in plaintiff's hands. Consultant Dr. Ali also found that plaintiff had limitations in his hands, *i.e.*, plaintiff could perform some actions ("carry, tie shoes, open a door, dial a phone, make a fist, pick up a pencil, write") but not other actions ("push, pull, button clothes"). Dr. Douglass found that plaintiff's ability to push and pull was limited in both upper extremities and that his handling (gross manipulation) was limited. While the ALJ's RFC found some limitations (plaintiff "can frequently use bilateral upper extremities for hand controls"), there is no accounting for other limitations related to grip strength and manipulation such as the inability to push, pull, or button clothes. Based on this record, the ALJ's finding that NP Hodge's opinion was not persuasive with respect to grip strength and manipulation is not supported by substantial evidence. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate NP Hodge's December 2019 opinions (Exhs. 15F and 16F, PageID.979-982).

Plaintiff also referred, briefly, to the report of occupation therapist Marie Bell, which was co-signed by Dr. Haughn. PageID.1028. While plaintiff contests the ALJ's evaluation of Ms. Bell as unpersuasive, he does not present meaningful argument on this issue. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is denied.

### 2. Mental limitations

The ALJ summarized plaintiff's history of mental treatment and functioning as follows,

> [T]he claimant has had conservative psychiatric treatment and has not required inpatient care, or psychiatric hospitalization. The record shows that medication is effective in controlling his symptoms (B9F/17). During his examinations, he regularly exhibits intact memory and intact attention and concentration, even when he has a depressed or anxious mood (B3F/7, 12, 17, 23; B9F/3, 8, 13, 18; B10F/39). Moreover, the claimant has continued to perform a number of activities that are consistent with basic work functions. He remains independent in his personal care, and he remains able to do light housework, go shopping, and manage finances (B5E/2-5). Taken as a whole, the record does not demonstrate that the limitations resulting from the claimant's impairments are totally work preclusive, or greater than provided in the above residual functional capacity assessment.

PageID.67.

Plaintiff contends that the ALJ failed to properly evaluate the opinion of plaintiff's treater, Jennifer Richardson, PA-C, and the non-examining consultant, Judy Strait, Psy.D. The ALJ addressed these two opinions as follows:

> As for the mental opinion evidence, Judy Strait, Psy.D., evaluated the claimant's mental health records on behalf of the State agency and found that the claimant retains the mental capacity to perform simple, routine tasks on a sustained basis, but may have difficulty with detailed tasks, may not work best with the general public, may struggle with unpredictable levels of work stress or frequent workplace changes, and may work best alone or with occasional interaction with coworkers and supervisors (B3A/17). Dr. Strait's opinion is persuasive. She supports her opinion with discussions of the evidence, and her opinion is within her area of expertise and generally consistent with the record as a whole. However, Dr. Strait does not attempt to quantify the claimant's ability to sustain public interaction.
>
> Jennifer Richardson, PA-C, submitted a September 2018 statement that the claimant is unable to participate in a 20 hour work week (B2F/1). This statement does not provide a functional analysis of the claimant's abilities and limitations, and addresses an issue reserved to the Commissioner (20 CFR 419.927(e)(1) and SSR 96-5p). Accordingly, it is not persuasive.
>
> Physician's Assistant Richardson also completed a December 2019 questionnaire, and signed an interview transcript the same month (B13F; B14F).

11

> She states that the claimant has "marked" limitations in his ability to interact with others, "marked" difficulties in maintaining concentration, persistence, and pace, and "marked" limitations in adapting or managing himself (B13F/2). She further states that he is unable to maintain attention for two-hour segments, unable to sustain an ordinary routine, unable to work in proximity to others, and unable to complete a normal workday (B13F/1). She asserts that the claimant experiences "extreme" anxiety, with hypervigilance, anger management issues, psychomotor retardation, and racing thoughts that cause "great difficulty" in concentrating and maintaining attention (B14F/1, 2). These two statements from the PAC are not persuasive. They are inconsistent with the claimant's repeatedly unremarkable mental status examinations by multiple providers (B3F/7, 12, 17, 23; B5F/27. 52, 60, 141; B6F/13; B9F/3, 8, 13, 18; B10F/26, 33, 39, 41, 49, 55, 62).

PageID.68.

Plaintiff does not address the ALJ's finding that Dr. Strait's opinions were persuasive other than to state that "the ALJ noted that Dr. Strait did not attempt to quantify Mr. Arnett's ability to sustain public interaction." Plaintiff's Brief (ECF No. 14, PageID.1029). This single observation does not render the ALJ's evaluation defective. Accordingly, plaintiff's claim of error related to Dr. Strait is denied.

With respect to PAC Richardson's December 2019 questionnaire (Exh. 13F), the Court notes that it does not contain any narrative explanation (PageID.974-976), however, her December 2019 statement (ECF No. 14F) provides some explanation for her findings (PageID.977-978). The ALJ found that PAC Richardson's opinions were not persuasive in two respects, *i.e.*, that plaintiff experiences "extreme" anxiety and that plaintiff has racing thoughts which cause "great difficulty" in concentrating and maintaining. The ALJ did not address the balance of Richardson's opinions in any detail. Given this record, the ALJ did not explain how she considered the supportability and consistency factors for PAC Richardson's medical opinions. 20 C.F.R. § 416.920c(b)(2). In this regard, the ALJ has failed to set out a sufficient analysis of the evidence to allow an appellate court to trace the path of her reasoning with respect to PAC Richardson's opinions. *See Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519

12

(6th Cir. 2011) (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate PAC Richardson's December 2019 opinions (Exhs. 13F and 14F, PageID.974-978).

> **C. The RFC determination failed to include all plaintiff's well-documented impairments as required by 20 C.F.R. § 416.920a, SSR 96-8p and SSR 85-15.**

As discussed, this matter is to be remanded to re-evaluate the medical evidence from NP Hodge and PAC Richardson with respect to plaintiff's physical and mental impairments which affect his RFC. The matters raised in this claim of error have been addressed and should be resolved on remand.

> **D. The ALJ did not comply with 20 C.F.R. § 416.929 when she addressed plaintiff's subjective symptoms, and her corresponding conclusions are not supported by substantial evidence.**

Finally, plaintiff contends that the ALJ did not address all of his subjective symptoms. While it is well-settled that pain may be so severe that it constitutes a disability, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A). The agency regulations provide that, "[i]n evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you." 20 C.F.R. § 416.929(c)(1).

The agency considers both "objective" medical evidence and "other evidence". 20 C.F.R. § 416.929(c)(2)-(3). "Objective medical evidence is evidence obtained from the application

13

of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 416.929(c)(2).

"Other evidence" includes "other information you may submit about your symptoms." *See* 20 C.F.R. § 416.929(c)(3).

> Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id*.

With respect to the objective medical evidence related to the alleged pain, the ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine, status post fusion, and degenerative changes of the right hand and thumb. PageID.61. The ALJ also considered plaintiff's non-severe impairments, stating:

> The claimant complains of migraines, gastro-esophageal reflux disease (GERD), high blood pressure, and hypothyroidism, allergies, sleep apnea, and chronic opioid use, and he has a history of foot fracture (B4E/2; B5F/187; B6F/91). However, the medical record does not demonstrate that these conditions cause more than minimal work limitations. Accordingly, these are nonsevere. Nonetheless, I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

> The claimant complains of left hand pain. However, a claimant's symptoms or combination of symptoms alone cannot be the basis for a finding of an impairment, regardless of how genuine the complaints may be, without medical signs and/or laboratory findings demonstrating the existence of the physical or mental (SSR 96-4p). Because the cause of the claimant's alleged left hand pain has not been confirmed through imaging or other objective diagnostic technique, it is considered non-medically determinable.

PageID.61.

Plaintiff contends that the ALJ would have found him disabled had she considered factors "including but not limited to the character and location of symptoms, change over time, medications used or tried, and daily activities." PageID.1033. In this regard, plaintiff contends that his alleged pain level is supported by his previous lumbar surgery, physical therapy, osteopathic manipulation, medications, and his need for assistance for his activities of daily living and hygiene. *Id*. at PageID.1033-1034.

The record reflects that the ALJ considered "other evidence" as contemplated by the regulations. In this regard, the ALJ found that,

> [T]he claimant has continued to perform a number of activities that are consistent with basic work functions. He remains independent in his personal care, and he remains able to do light housework, go shopping, and manage finances (B5E/2-5).

PageID.67. The ALJ also addressed plaintiff's history of medical treatment, including treatment for the arthritis in his hands. PageID.64-67. Finally, the ALJ noted that "the claimant testified at the hearing that he currently lives with a roommate who is paid by the Department of Health and Human Services [DHHS] to help take care of the claimant." PageID.64. In this regard, at the hearing, plaintiff testified that a roommate (Jessica Alfonso) is paid by the DHHS to assist him; she helps bathe him sometimes and pre-cooks meals when she has to go to work. PageID.82, 87, 95-96. Accordingly, this claim of error is denied.

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate NP Hodge's December 2019 opinions (Exhs. 15F and 16F, PageID.979-

15

.

982) and PAC Richardson's December 2019 opinions (Exhs. 13F and 14F, PageID.974-978). A judgment consistent with this opinion will be issued forthwith.

Dated:  September 26, 2022                                /s/ Ray Kent  
                                                          RAY KENT  
                                                          United States Magistrate Judge